UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| TRIMEKA N. WESBY, | CASE NO. 18-11098-ADB |
| Debtor(s). | |
| – – – – – – – – – – – – – – – – – – – – – – | – – – – – – – – – – – – – – – – – |
| FREEDOM MORTGAGE CORPORATION, | CONTESTED MATTER |
| Movant, | |
| v. | |
| TRIMEKA N. WESBY, Debtor, | |
| HUON LE, Chapter 13 Trustee, | |
| Respondents. | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW, FREEDOM MORTGAGE CORPORATION ("Movant"), brings this motion for relief from the automatic stay in order that it might recover real property from the estate, showing the Court as follows:

1.

This is a Motion under Section 362 (d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the holder or the servicer of a loan secured by certain real property in which Debtor(s) claims an interest.  Said real property is security for a promissory note ("Note"), and is commonly known as 3104 Pebblebrook Lane, Hephzibah, Georgia 30815 (the "Property").

3.

Debtor is in default of the monthly installments pursuant to the Note. Due for September 2018, Debtor is delinquent for four (4) post-petition payments totaling $4,622.64 plus attorney fees and costs.

4.

The unpaid principal balance is $132,563.67, and interest is due thereon in accordance with the Note. Movant's total claim is approximately $147,128.48.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Movant requests it be permitted to contact Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

7.

Movant shows that the provisions of Bankruptcy Rule 4001 (a)(3) should be waived.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-

bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (3) for waiver of Bankruptcy Rule 4001 (a)(3); and (4) for such other and further relief as is just and equitable.

Respectfully submitted this 19th day of December, 2018.

/s/ Patrick J. Geheren
Patrick J. Geheren
GA Bar No: 288801
Attorney for Movant
The Geheren Firm, P.C.
4828 Ashford Dunwoody Road
2nd Floor
Atlanta, GA 30338
678.587.9500
pgeheren@geherenlaw.com

*Wesby*

Book 01430:0246 Augusta - Richmond County
2014010116 02/21/2014 14:44:13.01
$595.50 SECURITY DEED

2014010116 Augusta - Richmond County
Intangible Tax: $559.50

After Recording Return To:
ACOPIA, LLC
306 NORTHCREEK BLVD, 100
GOODLETTSVILLE, TENNESSEE 37072
Loan Number: 3266436

O. Franklin Askin, Jr., P.C.
ATTORNEY AT LAW
2913 Professional Parkway
Augusta, GA 30907

*14-016*

———————————— [Space Above This Line For Recording Data] ————————————

# SECURITY DEED

| FHA CASE NO. |
| --- |
|  |

MIN:                                            **MERS Phone: 888-679-6377**

THIS SECURITY DEED ("Security Instrument") is given on  FEBRUARY 7, 2014
The grantor is TRIMEKA WESBY, AN UNMARRIED WOMAN

                                                                                                ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. MERS
is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns.  MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. (888) 679-MERS.   ACOPIA, LLC, A TENNESSEE LIMITED LIABILITY
COMPANY                                                                                      ("Lender")
is organized and existing under the laws of  TENNESSEE
and has an address of 306 NORTHCREEK BLVD, 100, GOODLETTSVILLE, TENNESSEE
37072
Borrower owes Lender the principal sum of   ONE HUNDRED EIGHTY-SIX THOUSAND FOUR
HUNDRED FIFTY-NINE AND 00/100            Dollars (U.S. $ 186,459.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on MARCH 1, 2044          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower
does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns)
and the successors and assigns of MERS with power of sale, the following described property located in
                        RICHMOND County, Georgia:

*DocMagic eForms*
*www.docmagic.com*

Gadotz.fha.xml

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 151-3-028-00-0

which has the address of 3104 PEBBLEBROOK LANE

[Street]

HEPHZIBAH                    , Georgia          30815          ("Property Address"):

[City]                                          [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                    Page 2 of 8                    DocMagic eForms
                                                                      www.docmagic.com

Gadotz.fha.xml

Book 1430:0248 Augusta - Richmond County
2014010116 02/21/2014 14:44:13.01

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA 07/03/12                                    Page 3 of 8                              *DocMagic eForms*
                                                                                               *www.docmagic.com*

Gadotz.fha.xml

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

   **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                                    Page 4 of 8                          DocMagic *eForms*
                                                                                              www.docmagic.com

(d)  **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  6 0  DAYS
from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to  6 0  DAYS                          from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

  **10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

  **11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

  **12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

  **13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

  **14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

  **15.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                                Page 5 of 8                                *DocMagic eForms*
www.docmagic.com

Gadotz.fha.xml

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds, of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are**

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                                    Page 6 of 8                              DocMagic *eForms*
                                                                                                 www.docmagic.com

Gadotz.fha.xml

Book 01430 0252 Augusta- Richmond County
2014010116 02/21/2014 14:44:13.01

irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] Acknowledgment Waiver Rider | |

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                                   Page 7 of 8                    DocMagic *eForms*
                                                                                      www.docmagic.com

Gadotz.fha.xml

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)                    _____ (Seal)
TRIMEKA  WESBY          -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                        -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                        -Borrower                                        -Borrower


_____ [Space Below This Line For Acknowledgment] _____

Signed, sealed and delivered on this ___7ᵗʰ___ day of _FEBRUARY 2014_ in the presence of:


_____                    _____
Unofficial Witness  O. Franklin Askin, Jr.         Notary Public, State of Georgia

                                                   Printed Name: _____

                                                   My commission expires: _____

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  07/03/12                         Page 8 of 8                    DocMagic eForms
                                                                           www.docmagic.com

Gadotz.fha.xml

FHA Case No.
Loan Numl

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          7th          day of
FEBRUARY, 2014                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to ACOPIA, LLC, A
CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

3104 PEBBLEBROOK LANE, HEPHZIBAH, GEORGIA 30815

[Property Address]

The Property is part of a planned unit development ("PUD") known as:
SPRING CREEK VILLAGE

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included within the term
"extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to
Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the required coverage
is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any
lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event
of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to
the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

---

FHA - MULTISTATE PUD RIDER
USFHAP.RDR  10/29/08

Page 1 of 2

*DocMagic eForms*
www.docmagic.com

Usfhap.rdr.xml

Book 01430:0255 Augusta, Richmond County
20140101:16 02/21/2014 14:44:13.01

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.


_____ (Seal)        _____ (Seal)
TRIMEKA WESBY                          -Borrower                                               -Borrower


_____ (Seal)        _____ (Seal)
                                       -Borrower                                               -Borrower


_____ (Seal)        _____ (Seal)
                                       -Borrower                                               -Borrower


FHA - MULTISTATE PUD RIDER
USFHAP.RDR  10/29/08                          Page 2 of 2                          DocMagic eForms
                                                                                  www.docmagic.com

Usfhap.rdr.xml

Book 01430:0256 Augusta - Richmond County
20140101116 02/21/2014 14:44:13.01

Exhibit "A"

ALL THAT LOT OR PARCEL OF LAND, with improvements thereon, situate, lying and being in the State of Georgia, County of Richmond, being known and designated as **Lot 29, Spring Creek Village Subdivision,** as shown on a plat recorded in the Office of the Clerk of the Superior Court of Richmond County, Georgia, in **Realty Book 8, Pages 99-104**. Reference is hereby made to said plat for a more complete and accurate description as to the metes, bounds and location of said property.

This property is conveyed subject to Declaration of Covenants, Restrictions and Easements and Right of Ways of record in said Clerk's Office in Book 24X, Page 303, Book 400, Page 325, Book 784, Page 420, Book 979, Page 2527, Book 1227, Page 1032, and Book 1341, Page 348, and to any and all other restrictions and easements of record.

**Map and Parcel: 151-3-028-00-0        3104 Pebblebrook Lane, Hephzibah, GA  30815**

Book 01430-0257 Augusta - Richmond County
2014010116 02/21/2014 14.44.13.01

Loan Number:

# ACKNOWLEDGMENT AND WAIVER
# OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 7th day of  FEBRUARY, 2014    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to ACOPIA, LLC, A CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3104 PEBBLEBROOK LANE, HEPHZIBAH, GEORGIA 30815

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH  NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
GAAWBR.MSC  07/06/10                         Page 1 of 3

DocMagic eForms
www.docmagic.com

Gaawbr.msc.xml

Book 01430:0258 Augusta - Richmond County
2014010116002/21/2014 14.44.13.01

READ AND AGREED BY GRANTOR:

————————————— [Space Below This Line For Acknowledgment] —————————————

Signed, sealed and delivered on this ___7th___ day of __FEBRUARY 2014__ in the presence of:

——————————————————
Unofficial Witness  **O. Franklin Askin, Jr.**

——————————————————
Notary Public, State of Georgia

Printed Name: ——————————————

My commission expires: ——————————

*[notary seal: KIMBERLY MIDGETT, NOTARY PUBLIC, EXP 05-09-2015, RICHMOND COUNTY GA]*

——————————————— (Seal)
TRIMEKA WESBY              -Borrower

——————————————— (Seal)
                              -Borrower

——————————————— (Seal)
                              -Borrower

——————————————— (Seal)
                              -Borrower

——————————————— (Seal)
                              -Borrower

——————————————— (Seal)
                              -Borrower

———————————————————————————————————————————————

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
GAAWBR.MSC  07/06/10                     Page 2 of 3

**DocMagic** *eForms*
www.docmagic.com

Gaawbr.msc.xml

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this 7th day of FEBRUARY 2014.

_____          _____
Notary Public                      O. Franklin Askin, Jr.   Closing Attorney

KIMBERLY MIDGETT
NOTARY
PUBLIC
EXP 05-09-2015
RICHMOND COUNTY, GA

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
GAAWBR.MSC  07/06/10                    Page 3 of 3

DocMagic eForms
www.docmagic.com

Filed in this office:
Augusta - Richmond County
02/21/2014 14:44:13.01
Elaine C. Johnson
Clerk of Superior Court

Gaawbr.msc.xml

MIN:                                                      Loan Number:

# NOTE

FHA Case No.

FEBRUARY 7, 2014                AUGUSTA                  GEORGIA
[Date]                          [City]                  [State]

3104 PEBBLEBROOK LANE, HEPHZIBAH, GEORGIA 30815
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means ACOPIA, LLC, A CORPORATION
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED EIGHTY-SIX THOUSAND FOUR HUNDRED FIFTY-NINE AND
00/100                              Dollars (U.S. $ 186,459.00            ),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of FOUR AND 250/1000                          percent
(      4.250 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
   (A) Time
   Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning
on APRIL 1, 2014           . Any principal and interest remaining on the 1st   day of
MARCH, 2044                , will be due on that date, which is called the "Maturity Date."
   (B) Place
   Payment shall be made at 306 NORTHCREEK BLVD, 100, GOODLETTSVILLE,
TENNESSEE 37072
                                                  , or at such other place
as Lender may designate in writing by notice to Borrower.
   (C) Amount
   Each monthly payment of principal and interest will be in the amount of U.S. $ 917.27
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.
   (D) Allonge to this Note for Payment Adjustments
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09              Page 1 of 3                    DocMagic *eFerms*
                                                               www.docmagic.com

Usfha.nte.xml

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                   percent (      4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  09/25/09                                    Page 2 of 3                                    DocMagic *eForms*
www.docmagic.com

Usfha.nte.xml

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
TRIMEKA WESBY                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                          -Borrower

Pay To The Order Of                              Pay To The Order Of
Freedom Mortgage Corporation
Without Recourse                                 Without Recourse
Acopia, LLC                                      Freedom Mortgage Corporation

Sandra Skinner, AVP                              Sandra Skinner, AVP
Texas Capital Bank, NA                           Texas Capital Bank, NA
As Attorney-In-Fact                              As Attorney-In-Fact

                                                           [Sign Original Only]

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                    Page 3 of 3                    DocMagic *e*Forms
                                                                     www.docmagic.com

Usfha.nte.xml

Loan No.:

FHA Case No.:

# PROMISSORY NOTE

February 10th, 2016

3104 Pebblebrook Lane, Hephzibah, Georgia 30815

## 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of fifty four thousand seven hundred fifty two and 49/100

Dollars (U.S. $  54,752.49        ), to the order of the Lender.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

### (A) Time

On  February 1st, 2046        or, if earlier, when the first of the following events occurs:

   (i)    Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

  (ii)    The maturity date of the primary Note has been accelerated, or

 (iii)    The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary.

### (B) Place

Payment shall be made at the Office of Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 Seventh Street, SW, Washington, DC 20410 or any such other place as Lender may designate in writing by notice to Borrower.

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Loan No.

## 6.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| 2-22-2016 | | Trimeka Wesby | (Seal) |
|---|---|---|---|
| Date | | | –Borrower |

| | | | (Seal) |
|---|---|---|---|
| Date | | | –Borrower |

| | | | (Seal) |
|---|---|---|---|
| Date | | | –Borrower |

| | | | (Seal) |
|---|---|---|---|
| Date | | | –Borrower |

Recording Requested By: Freedom Mortgage Corporation
When Recorded Return To: Sahanashree Urs, Freedom Mortgage Corporation, 500 Virginia Dr, Ste 502, Ft Washington, PA 19034

|||||||||||||||||||||||||||||||||||

### CORPORATE ASSIGNMENT OF SECURITY DEED

Richmond, Georgia
SELLER'S SERVICING #:                    "WESBY,"

MIN #:                    SIS #: 1-888-679-6377

Date of Assignment: July 19th, 2018
Assignor: Mortgage Electronic Registration Systems, Inc., solely as nominee for Acopia, LLC, A Tennessee Limited Liability Company, its successors and assigns at P.O. Box 2026, Flint, MI 48501-2026
Assignee: Freedom Mortgage Corporation at 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

Executed By: TRIMEKA WESBY, AN UNMARRIED WOMAN  To: Mortgage Electronic Registration Systems, Inc., solely as nominee for Acopia, LLC, A Tennessee Limited Liability Company, its successors and assigns
Dated: 02-07-2014 Recorded: 02-21-2014 as Instrument No. 2014010116, Book/Reel/Liber 01430, Page/Folio 0246
In the County of Richmond, State of Georgia.

Property Address: 3104 PEBBLEBROOK LANE, HEPHZIBAH, GA 30815

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $186,459.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

Mortgage Electronic Registration Systems, Inc., solely as nominee for Acopia, LLC, A Tennessee Limited Liability Company, its successors and assigns
On _7-23-18_

By: _Howard D Wiggins II_
Howard D. Wiggins II , Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

_Janet K. Minihall_

NOTARY WITNESS

STATE OF PA
COUNTY OF MONTGOMERY

Subscribed and sworn to (or affirmed) before me on _7-23-18_, by HOWARD D WIGGINS II Assistant Secretary, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

_Eric Sturgis_

(This area for notarial seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Eric Sturgis
Upper Dublin Twp, Montgomery County
My Commission Expires 01/11/2020

*7/19/2018 2:34:08 PM*52216826*52216828*323*GASTATE_MORT_ASSIGN_ASSN

BANKRUPTCY CASE NO. 18-11098-SDB

CHAPTER 13

CERTIFICATE OF SERVICE

I certify that copies of this Motion for Relief from Stay has been served upon the above-named debtor(s), the respondent/attorney and debtor's attorney and other parties in interest as listed below.  Unless otherwise noted below, service was made by first-class United States Mail, postage prepaid, this 19th day of December, 2018.

/s/ Patrick J. Geheren

Patrick J. Geheren
GA Bar No: 288801
Attorney for Movant
The Geheren Firm, P.C.
4828 Ashford Dunwoody Road
2nd
Floor
Atlanta, GA 30338
678.587.9500
pgeheren@geherenlaw.com

Huon Le
P.O. Box 2127
Augusta, GA 30903

Lee Ringler
808 Greene Street, Ste 200
Augusta, GA 30901

Trimeka N. Wesby
3104 Pebblebrook Lane
Hephzibah, GA 30815-5799